# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

ALICIA ROCHA,

         Plaintiff,

  vs.

COMMISSIONER OF SOCIAL

SECURITY,

         Defendant.

No. 1:17-cv-03034-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

     BEFORE THE COURT are the parties' Cross-motions for Summary
Judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate
judge. ECF No. 7. The Court, having reviewed the administrative record and the
parties' briefing, is fully informed. For the reasons discussed below, the Court
denies Plaintiff's Motion (ECF No. 15) and grants Defendant's Motion (ECF No.
16).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits (DIB) and Title XVI supplemental security income (SSI) benefits in June 2010, alleging a disability with an onset date of December 17, 2009. Tr. 321-28. On March 20, 2013, Plaintiff received a partially favorable decision finding her disabled from December 17, 2009 through November 12, 2012, but subsequently able to perform her past relevant work as a medical receptionist. Tr. 82-109. The ALJ concluded medical improvement occurred as of November 13, 2012, the date Plaintiff's disability ended following a six-month recovery period from her May 12, 2012 surgery on the lumbar spine. Tr. 96. Plaintiff did not appeal that decision. Tr. 14.

Plaintiff again applied for DIB and SSI on June 18, 2013, with an onset date of November 13, 2012. Tr. 336-50. Benefits were denied initially, Tr. 112-31, and upon reconsideration. Tr. 132-61. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on August 9, 2015. Tr. 33-77. On November 4, 2015, the ALJ denied Plaintiff's claim. Tr. 11-32.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 20, 2013, the date of the previous partially favorable decision. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine and obesity. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 21. Following *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the ALJ adopted the ALJ's prior RFC finding that Plaintiff has the RFC to:

> lift and carry ten pounds occasionally and less than ten pounds frequently, to sit for about six hours in an eight-hour workday, and to stand and/or walk about two hours in an eight-hour workday. She can occasionally stoop, crawl, crouch, and kneel. She cannot climb ladders, rope, or scaffolding. She needs to avoid concentrated exposure to vibration. Due to back pain symptoms, she needs to briefly alternate between sitting and standing approximately once very hour.

Tr. 21. At step four, the ALJ found Plaintiff was able to perform her past relevant work as a medical receptionist. Tr. 24. Alternatively, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are

ORDER - 7

other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as sedentary assembler, appointment clerk, and semiconductor bonder.  Tr. 25.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since March 20, 2013 through the date of the decision.  Tr. 25.

On December 21, 2016, the Appeals Counsel denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly found a presumption of continuing nondisability;

2. Whether the ALJ properly identified all of Plaintiff's severe impairments at step two;

3. Whether the ALJ properly weighed Plaintiff's symptom claims;

4. Whether the ALJ properly weighed the medical opinion evidence; and

5. Whether the ALJ properly determined the RFC.

*See* ECF Nos. 15, 17.

ORDER - 8

# DISCUSSION

## A. Presumption of Nondisability

Plaintiff contends the ALJ erred in concluding Plaintiff failed to rebut the presumption of continuing nondisability and failed to establish "changed circumstances" since March 20, 2013.  ECF No. 15 at 7.

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Secy of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Under the doctrine of res judicata, a prior, final determination of nondisability bars relitigation of that claim through the date of the prior decision.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).  Furthermore, in the Ninth Circuit, a prior, final determination of nondisability "create[s] a presumption that [the claimant] continued to be able to work after that date." *Id*. (citation and internal quotation marks omitted).[1]  "However, the authority to apply res judicata to the period

---

[1] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social Security Administration's (SSA) interpretation of Social Security policy requiring de novo review of claims for unadjudicated periods.  The SSA applies the *Chavez*

*subsequent* to a prior determination is much more limited." *Lester*, 81 F.3d at 827 (emphasis in original). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citation omitted). Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," and a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827-28 (citations omitted); *see also* Acquiescence Ruling (AR) 97-4(9), available at 1997 WL 742758 at *3.

*1. New Impairments*

Plaintiff does not challenge the ALJ's application of res judicata from November 13, 2012 (the day after the closed period of disability) up to the date of the earlier decision, March 20, 2013. *See* ECF No. 15. Instead, Plaintiff contends the ALJ erred in concluding Plaintiff failed to demonstrate changed circumstances since March 20, 2013. ECF No. 15 at 7. As one of three alternative arguments, Plaintiff claims she rebutted the presumption by raising two new impairments: hip

_____

presumption only as to claimants residing in the Ninth Circuit. AR 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 10

pain ("hip degeneration" or "bilateral hip spurs") and pain disorder.  ECF No. 15 at 10; ECF No. 17 at 2.  In Plaintiff's previous applications, Plaintiff alleged disability due to back pain, knee pain, depression, and anxiety.  Tr. 17-18. Plaintiff's current applications allege disability due to back pain, knee pain, depression, leg pain, hip pain, and ankle pain.  Tr. 18, 435.  Though hip pain was sporadically mentioned in the medical evidence before the previous ALJ, *see, e.g.,* Tr. 1467, degenerative changes in the hip and hip pain were not impairments raised in the previous applications or addressed in the March 20, 2013 administrative decision.  Tr. 86-102.

The ALJ concluded that the medical evidence does not "suggest the existence of any new impairment (s) since March 20, 2013."  Tr. 18.  The ALJ acknowledged that "[w]hile it appears that she has alleged additional impairments, she has reported throughout the record that these pain symptoms in her lower extremities stem from her lower back impairment.  As such, I have considered them as one impairment," namely degenerative disc disease which was an impairment considered in the prior decision.  Tr. 18.

The ALJ's conclusion that Plaintiff's hip pain "stems from" degenerative disc disease, as opposed to another condition, involves a medical judgment that is not contained in the medical record.  The record evidence shows Plaintiff was referred for an x-ray of her pelvis to look for hip osteoarthritis.  Tr. 1581.  Imaging

performed on June 30, 2014 identified "spurring at the margins of the acetabulum bilaterally" and noted the impression "mild degenerative changes of the hips." Tr. 157. Plaintiff's physician Henry Kim, M.D. at Water's Edge Memorial Pain Relief Institute (Water's Edge) reviewed the x-ray and diagnosed "hip pain." Tr. 1574. The ALJ's conclusion that this evidence does not suggest any new impairment is in direct conflict with the ALJ's finding: "[w]hile she has endorsed pain in her lower extremities stemming from her back pain, there is no evidence of any impairment in her lower extremities *other than mild degenerative changes in the bilateral hips*." Tr. 18 (emphasis added).

The ALJ held, and Defendant contends herein, that this evidence does not demonstrate a "greater disability," and therefore, does not rebut the presumption of continuing nondisability. Tr. 18; ECF No. 16 at 8. However, the *Chavez* standard is not applied rigidly: "all an applicant has to do to preclude the application of res judicata is raise a new issue in a later proceeding." *Vasquez v. Astrue*, 572 F.3d 586, 598 n.9 (9th Cir. 2009). Moreover, the newly asserted impairment need not be severe or disabling, the presumption can be overcome based only upon the assertion of new impairments. *Id.* ("There would, of course, be little point in saying that a claimant raising a new issue can escape the presumption of continuing nondisability, but only after the claimant has already proven the impairment is severe.").

As Plaintiff's application raised "hip pain" as a new impairment not previously presented in her first application and adjudicated by the previous decision, it was error for the ALJ to apply the presumption of continuing nondisability as to the period subsequent to the prior ALJ's ruling.

Given the Court's conclusion, it need not decide the merits of Plaintiff's alternative assertions of error on the issue of the presumption of continuing nondisability. The Court separately addresses Plaintiff's contention that the ALJ failed to properly consider Dr. Schneider's pain disorder diagnosis in the analysis of step two.[2]

*2. Harmless Error*

Plaintiff fails to identify how the presumption of continuing nondisability is implicated in the ALJ's assessment of the evidence. *See Ludwig v. Astrue*, 681

---

[2] The Court notes that unlike in *Lester* and *Vasquez*, Plaintiff never asserted pain disorder as an impairment in her current applications, Tr. 336-50, at the administrative hearing, Tr. 33-77, or otherwise at the administrative level, Tr. 8. The parties did not address whether the presumption of nondisability can be overcome by the mere existence of a diagnosis in the record that was never mentioned by Plaintiff as contributing to her disability. *See* ECF No. 17 at 3; ECF No. 16.

ORDER - 13

F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his "substantial rights," which is to say, not merely his procedural rights.") (citing *Shinseki*, 556 U.S. at 407-09). Even if the ALJ had correctly found that Plaintiff rebutted the presumption of continuing nondisability, the ALJ would have still had to proceed with a review of the medical evidence, as he did despite his error. Overcoming the presumption of continuing nondisability does not mean that previous administratively final decisions have no res judicata effect. *Chavez*, 844 F.2d at 694 (even where the presumption is overcome, ALJ's are instructed to "give some res judicata consideration" to prior ALJ "findings concerning the claimant's [RFC], education and work experience[.]").

Here, the RFC finding is still subject to res judicata absent new and material evidence that warrants a change. The ALJ concluded there is no new and material evidence warranting a change, Tr. 18, 21-24, and Plaintiff disagrees. ECF No. 15 at 8-9. Whether the evidence submitted in support of her current applications shows evidence of worsening of Plaintiff's medical impairments, and whether that evidence is material and entitles Plaintiff to an updated determination of her RFC is a separate issue pertaining to the ALJ's RFC determination, Tr. 21, addressed separately below in Section E.

1    Accordingly, Plaintiff has not demonstrated that the ALJ's error in

2  application of the presumption of continuing nondisability prejudiced Plaintiff.

3  **B.  Step Two**

4    Plaintiff contends the ALJ erred by failing to find any severe psychological

5  impairment at step two.  Specifically, Plaintiff argues the ALJ failed to consider

6  Plaintiff's diagnosis of pain disorder.  ECF No. 15 at 11.

7    At step two, a claimant must make a threshold showing that his medically

8  determinable impairments significantly limit his ability to perform basic work

9  activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§

10  404.1520(c), 416.920(c).  The impairments identified at step two are not intended

11  to be a comprehensive survey.  Step two is simply "a de minimis screening device

12  to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

13  1996).  Accordingly, a claimant can only be prejudiced at step two by a finding

14  that she has no severe impairments at all; otherwise, she advances to the next steps.

15  The omission of an impairment at step two can only be harmful if it prejudices

16  Plaintiff in steps three through five.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th

17  Cir. 2005).

18    "[S]ymptom-related limitations and restrictions must be considered at [ ]

19  step [two] of the sequential evaluation process, provided that the individual has a

20  medically determinable impairment(s) that could reasonably be expected to

ORDER - 15

produce the symptoms." Social Security Ruling (SSR) 96–3p, 1996 WL 374181 (July 2, 1996). Thus, the first consideration at step two is determining what, if any, medically determinable impairments Plaintiff has. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 404.1508, 416.908.

Plaintiff's treating provider at Water's Edge referred Plaintiff to psychologist L. Paul Schneider, Ph.D. to help her cope with her pain symptoms. Tr. 1591 (treatment note dated November 21, 2013). Dr. Schneider evaluated Plaintiff on February 6, 2014 and assessed "pain disorder associated with psychological and physical factors (307.89)," a recognized mental disorder. Tr. 1589. This diagnosis was noted on five subsequent treatment records from appointments on April 4, 2014 and January 5, 2015, and three group therapy classes in 2015. Tr. 1582-83, 1556-67, 1553-54, 1558-59, 1564-65. Notably, Dr. Schneider did not mention "pain disorder" in his February 10, 2015 medical source statement. Tr. 1469-73 (listing "chronic pain," depression, and anxiety).

At step two, the ALJ listed the medically determinable impairments which he found to be severe, as well as those medically determinable impairments which

he found to not be severe, including depressive disorder and anxiety. Tr. 19. The ALJ determined that Plaintiff's chronic pain was severe as to its physical effects, concluding: "pain symptoms in her lower extremities stem from her lower back impairment. As such, I have considered them as one impairment." Tr. 18. Although the ALJ's decision discussed Dr. Schneider's treatment records and medical opinions, the ALJ did not discuss Dr. Schneider's diagnosis of pain disorder, or whether Plaintiff's pain was severe as to its mental and psychological effects. Tr. 18 (citing Tr. 1585); Tr. 19 (citing Tr. 1564, 1588, 1587).

The Court finds that the ALJ erred by not addressing Dr. Schneider's pain disorder diagnosis at step two of the analysis. The court "is constrained to review the reasons the ALJ asserts" and the ALJ did not explain the omission. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) Ninth Circuit case law recognizes the existence of pain-based impairments having "both a physical and psychological component." *Lester*, 81 F.3d at 829–30 (discussing a claimant's "acute pain", deemed "chronic pain syndrome" by a medical adviser) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that the Commissioner must consider all available evidence in assessing complaints of pain)); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (stating physician's report was "not conclusive on the issue of the extent to which appellant suffered from chronic pain syndrome on a

ORDER - 17

psychophysiologic basis[,]" and that, while it suggested the diagnosis, there was no evidence "from physicians concerning claimed psychophysiologic reaction to lower back pain" and "it is not at all clear from the report that appellant suffers from disabling levels of lower back pain.").

Because the ALJ did not explain whether pain disorder was a medically determinable impairment and if so, whether the impairment was severe, the Court finds that the ALJ erred at step two. Nonetheless, the Court finds this error inconsequential to the ultimate nondisability determination in this particular case, and therefore harmless. *Molina*, 674 F.3d at 1115 (9th Cir. 2012); *Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."). An error is harmless where it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The failure to list an impairment as severe at step two can be deemed harmless where associated limitations are considered at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the error is harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to identify any limitation associated with this impairment that was not considered by the ALJ and incorporated into the RFC. *See Stout*, 454 F.3d at 1055; *Burch*, 400 F.3d at 682. The ALJ considered and evaluated Plaintiff's complaints of pain. Tr. 18-20. The ALJ determined that Plaintiff's pain

symptoms did not impose functional limitations in excess of Plaintiff's physical impairment; thus, having considered Plaintiff's allegations of pain in connection with her physical impairments, there was no prejudicial error in declining to separately consider the pain disorder as a separate impairment. Tr. 18. Moreover, the ALJ's RFC assessment specifically included restrictions "due to back pain symptoms," limiting Plaintiff to a range of light work with occasional postural limitations. Tr. 21. The Court finds that the ALJ's failure to discuss Dr. Schneider's diagnosis of pain disorder is harmless error.

## C. Plaintiff's Symptom Claims

Plaintiff contends the ALJ failed to rely on reasons that were specific, clear and convincing in discrediting Plaintiff's symptom claims. ECF No. 15 at 11.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted). Second, "[i]f the claimant meets

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, inter alia, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ summarized Plaintiff's allegations in detail then determined that

Plaintiff's medically determinable impairments could reasonably be expected to

cause some of his alleged symptoms, but found that "not all of [Plaintiff's]

symptom allegations" were credible. Tr. 22. Though Plaintiff contends the ALJ

proffered just one reason to discredit her testimony ("the alleged failure to rebut

the presumption of nondisability," ECF No. 15 at 12), the ALJ's decision lists

several reasons. Tr. 22-23. The Court finds the ALJ provided specific, clear, and

convincing reasons for finding Plaintiff's symptom allegations, specifically her

pain, not credible to the extent they are inconsistent with the RFC assessment.

First, the ALJ noted Plaintiff's "vague complaints of pain involving her back

and lower extremities that are not substantiated with objective findings." Tr. 22.

An ALJ may not discredit a claimant's pain testimony and deny benefits solely

because the degree of pain alleged is not supported by objective medical evidence.

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In support of this finding,

the ALJ cited a January 2, 2015 CT scan yielding "several bulging discs" and

"mild multi-level facet arthrosis." Tr. 22 (citing Tr. 1602). Though Plaintiff

contends this imaging is consistent with her allegations of a worsening impairment,

the ALJ pointed to contrary evidence. Tr. 23 (citing Tr. 1601 (treatment note from

February 9, 2015)).  The CT scan was reviewed by an orthopedic surgeon, Michael

A. Chang, M.D., who indicated the scan showed "well placed implants and healed

L2-3 fusion" and concluded "[t]he source of her pain is not entirely clear."  Tr.

1601.  Dr. Chang recommended nonoperative treatment.  *Id.*  Dr. Chang's

interpretation of the 2015 CT scan supports the ALJ's conclusion.  The ALJ

reasonably concluded that Plaintiff's pain symptoms were inconsistent with the

objective evidence.  Although Plaintiff offers a different interpretation, the ALJ's

interpretation is rational and supported by substantial evidence, and therefore the

conclusion must be upheld.  *Molina*, 674 F.3d at 1111 (court must uphold the

ALJ's findings if they "are supported by inferences reasonably drawn from the

record [,]" even if the evidence is susceptible to multiple rational interpretations).

Second, the ALJ concluded that in contrast to Plaintiff's symptom claims,

physical examination findings have "consistently been normal" and

"unremarkable."  Tr. 23.  The ALJ cited a number of records from April 2013

through 2015, pointing out examination findings showing normal strength and

tone, no atrophy, slightly decreased sensation, intact reflexes, intact range of

motion in the hips, and the ability to walk unassisted.  Tr. 22-23 (citing Tr. 932,

1591, 1580, 1570, 1555, 1550).  The medical evidence is a relevant factor in

determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857.

Plaintiff accuses the ALJ of "clear cherry-picking" based on an "incomplete review of the record" "ignor[ing] numerous significant findings." ECF No. 15 at 13. The Court notes that the same examination findings also refer to moderate to severe limitation in lumbar range of motion. Tr. 1555, 1570, 1580, 1588. However, Plaintiff's contention the ALJ engaged in "cherry-picking" is misguided. The ALJ did acknowledge Plaintiff's diminished range of motion elsewhere in the decision. Tr. 21 ("the claimant has had diminished range of motion"). Moreover, the ALJ is not required to provide a robust discussion of every piece of evidence. *See, e.g., Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)). The Court concludes the ALJ cited specific evidence in the record that serves to undermine the persuasiveness of Plaintiff's alleged degree of physical limitation.

Third, the ALJ acknowledged evidence showing Plaintiff had contacted the Division of Vocational Rehabilitation for vocational training, which the ALJ concluded indicated "[Plaintiff] felt prepared to return to work." Tr. 23 (citing evidence Plaintiff had made contact regarding vocational training). Plaintiff's own perception of her ability to work is a proper consideration in determining

credibility.  *See* Cause No. 2:16-cv-00402-MKD, *Barnes v. Comm'r of Soc. Sec.*, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief indicates her allegation of symptoms precluding work are not credible.").  Plaintiff fails to challenge this reason.

Fourth, the ALJ properly considered Plaintiff's lack of follow through with prescribed medical treatment as a reason to find her not credible.  Tr. 22-23.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  The ALJ noted Plaintiff continued to use opiate medication even though she was counseled to stop.  Tr. 22-23.  The ALJ also noted Plaintiff was discharged from physical therapy after failing to attend numerous scheduled sessions.  Tr. 22 (citing Tr. 941-42).  Though Plaintiff was subsequently referred again to physical therapy, the ALJ noted there is no indication she followed through.  Tr. 23.  This was a clear and convincing, and unchallenged, reason to discredit Plaintiff's symptom claims.

Fifth, the ALJ considered evidence of drug seeking behavior, despite repeated counseling regarding her need to avoid opiate medication and try other

treatment modalities. Tr. 22 (citing Tr. 1591); Tr. 23 (citing Tr. 1550-51). Drug seeking behavior can be a clear and convincing reason to discount a claimant's credibility. *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug seeking behavior undermines a claimant's credibility). Evidence of Plaintiff's drug seeking behavior and provider caution regarding narcotic prescriptions is present throughout the record. Tr. 601, 988, 1005, 1551, 1566, 1588, 1591. This was a valid consideration in assessing Plaintiff's symptom claims.

The final reasons for partially discrediting Plaintiff's subjective complaints were that further operative treatment was not recommended and at the hearing, Plaintiff testified she was no longer taking any pain medication for her symptoms. Tr. 23. Evidence of " 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). Though Plaintiff had been prescribed and utilized medication for back pain in the past, Plaintiff reported her doctors did not want her on narcotics and she did not want to take medication because it did not bring her relief. Tr. 50-51, 1598. It was reasonable for the ALJ to consider conservative treatment measures as a reason to discount Plaintiff's testimony that her pain was so severe as to be completely disabling. *See Parra*, 481 F.3d at 751; *see also*

*Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

Overall, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom claims, including pain. The ALJ made extensive credibility findings and identified multiple valid reasons supported by the record for discounting Plaintiff's statements regarding her subjective claims.

Finally, the Court disagrees with Plaintiff's position that the ALJ's credibility findings were erroneous because he "failed to note the numerous references throughout the record" accounting for her obesity, which could exacerbate the effects of her other impairments. The ALJ is not required to discuss every piece of evidence. *Howard ex rel. Wolff*, 341 F.3d at 1012. The ALJ's decision clearly reflects that he considered her obesity, a severe impairment. Tr. 18-19 (finding obesity a severe impairment); Tr. 21 (discussing SSR 02-1p); Tr. 22-23 (discussing medical evidence noting weight as a factor and counseling Plaintiff to lose weight).

**D. Medical Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of treating psychologist L. Paul Schneider, Ph.D., treating sources Melissa Mikota,

ARNP, and Teresa Charvet, PA-C, and state agency medical consultant, Norman

Staley, M.D.  ECF No. 15 at 16-20.

Medical sources are divided into two categories: "acceptable" and "not

acceptable."  20 C.F.R. § 416.902.  Acceptable medical sources include licensed

physicians.  20 C.F.R. § 416.902.  In weighing acceptable medical source opinions

there are three types of physicians: "(1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining

physicians); and (3) those who neither examine nor treat the claimant but who

review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v.*

*Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's."  *Id*.  "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31 (9th Cir. 1995)).

The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, all of the determinative findings by the ALJ must be supported by substantial evidence. *See Bayliss,* 427 F.3d at 1214 n. 1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Prior to March 2017, physician's assistants were not classified as an "acceptable medical source." *See* 20 C.F.R. § 416.902(a)(8). Instead, physician's assistants were defined as "other sources" not entitled to the same deference as an "acceptable medical source." *Molina*, 674 F.3d at 1104. The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Id.*

*1. L. Paul Schneider, Ph.D.*

Dr. Schneider completed a medical source statement on February 10, 2015, the same day as Plaintiff's second group therapy class with Dr. Schneider. Tr. 1469-73. Dr. Schneider opined that Plaintiff would: (1) be severely limited in her ability to complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) be markedly limited in the ability to maintain attention and concentration for extended periods and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) likely be off-task over 30% of the time during a 40-hour work week; and (4) likely miss two days of work per month. Tr. 1471-72. In the comment section of the form, Dr. Schneider ascribed the limitations to the following conditions: "chronic pain with high stress, depression, anxiety." Tr. 1473. The ALJ accorded the entire opinion "no weight." Tr. 19.

The opinions of consulting examiner Jie Chen, M.D., Tr. 1050-56, and psychological consultant, John Gilbert, Ph.D., Tr. 141, 155, conflict with the opinion of Dr. Schneider. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Schneider's opinions.

An ALJ may discount a doctor's opinions where the doctor's opinions are not supported by his own medical records or his own clinical findings. *See, e.g.,*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ also need not accept a medical opinion that is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ found the opinion inconsistent with Dr. Schneider's own initial evaluation performed one year earlier, where "the claimant denied symptoms of generalized anxiety and depression . . . ." Tr. 19 (citing Tr. 1587). The ALJ also noted the opinion's inconsistencies with subsequent exams performed by treating physicians Dr. Kim and Dr. Chang where Plaintiff presented no subjective complaints related to her mental and psychological status. At these exams, the ALJ noted "the claimant had presented with an appropriate mood and affect and normal insight and judgment." Tr. 19 (citing treatment note from Dr. Kim dated March 20, 2015 (Tr. 1550) and treatment note from Dr. Chang dated February 9, 2015 (Tr. 1600)). Finally, in contrast, the ALJ gave significant weight to the contradictory opinions of Dr. Chen and Dr. Gilbert, finding their opinions consistent with the medical evidence. Tr. 19-21.

Plaintiff does not contend these reasons are not proper for rejecting Dr. Schneider's opinion. Instead, Plaintiff contends prejudicial error is "entirely predicated upon the ALJ's failure to consider" Dr. Schneider's diagnosis of a "pain disorder," thereby failing "to consider the impairment upon which Dr. Schneider's

opinion was based." ECF No. 15 at 19. First, the Court notes that Dr. Schneider's opinion is inconclusive as to the extent it was predicated on any diagnosis of pain disorder. The opinion did not mention "pain disorder," but rather "chronic pain with high stress, depression, anxiety." Tr. 1473. In addition, the ALJ need not presume that a diagnosis equates to work-related limitations. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("the mere diagnosis of an impairment ... is not sufficient to sustain a finding of disability."). A pain disorder is not necessarily severe or disabling. There must be a showing of related functional loss. As the ALJ found, Dr. Schneider's treatment records are devoid of examination findings supporting the degree of psychologically-based functional limitation set forth in his opinion. *See, e.g.,* Tr. 1589 (noting "[t]his is an intelligent woman who has strong capabilities" and "a lot of potential, and I think we can help her achieve that by continuing to hold her accountable and keeping her on track."); Tr. 1582 (noting progress in smoking cessation and appointment with vocational rehabilitation and tasks yet accomplish, such as changes in her eating, physical therapy, and taking medications on a regular basis); Tr. 1553-54, 1558-59, 1564-65. Plaintiff fails to identify any evidence otherwise. The lack of record support for the level of severity endorsed in Dr. Schneider's opinion was a specific and legitimate reason supported by substantial evidence for rejecting his opinion.

Moreover, any error in not having considered Plaintiff's pain disorder diagnosis was harmless error. *Molina*, 674 F.3d at 1111. The ALJ acknowledged Plaintiff was engaged with Dr. Schneider "to help[] her cope with pain symptoms" and he specifically considered Plaintiff's pain symptoms, along with all her mental health symptoms in assessing Dr. Schneider's opinion and Plaintiff's ability to perform basic mental work activities. Tr. 20-21 (finding no more than mild limitations in three functional areas). Plaintiff fails to identify any evidence suggesting Plaintiff's pain disorder produces symptoms or limitations independent or different from those considered by the ALJ in connection with her spinal impairment that would undermine the ALJ's analysis of Dr. Schneider's opinion.

The ALJ provided specific and legitimate reasons for rejecting the medical opinions.

### 2. Melissa T. Mikota, ARNP

On August 7, 2015, two days prior to the administrative hearing, Ms. Mikota filled out a "Medical Report." Tr. 1597-99. The report states Ms. Mikota treated Plaintiff from "[a]pproximately August of 2009 – April 16, 2015," however the extent of the treating relationship during this period is unknown. Tr. 1599. There are no other medical records from Ms. Mikota in the record. Ms. Mikota opined that Plaintiff would miss on average three days a month "depending on how her back pain is doing that day" as Plaintiff has "[c]urrently not . . . . had success with

pain management." Tr. 1599.  Ms. Mikota also indicated that Plaintiff has to lie

down during the day for four to six hours per day, 20-45 minutes at a time "to help

calm the lower back pain."  Tr. 1598.  The ALJ accorded Ms. Mikota's opinion

"little weight" finding it "inconsistent with the objective findings which have

shown no evidence of diminished strength over time."  Tr. 23.

The Court concludes substantial evidence supports the ALJ's reasoning.

The ALJ's decision adequately summarizes the objective findings, including those

based upon the imaging results from 2010 through 2015.  For example, in June

2014, lumbar x-rays showed post-surgical "satisfactory positioning of hardware"

and "no significant instability upon flexion and extension."  Tr. 1572, 18, 23.  In

October 2014, an MRI of the lumbar spine showed a "small central protrusion of

the L1-2 and L5-S1 discs," Tr. 1568, the same impression of the L5-S1 also

present in 2010, Tr. 515, and in 2011, Tr. 808, with no evidence of stenosis.  *See*

Tr. 1594.  The October 2014 MRI also showed "signal in the posterior annulus at

L4-5 and L5-S1 discs most likely representing tears of the annulus."  Tr. 1568.

Tears were also identified in 2011 imagery and noted to be relatively small to

moderate.  Tr. 816.  Finally, the October MRI showed "fluid collection in the soft

tissues dorsal to the sac at L2-3 most likely representing old seroma, lymphocele or

loculated CSF collection related to prior surgery."  Tr. 1568.  Thereafter, Plaintiff

was referred to Dr. Chang to determine whether the fluid collection could be the

source of pain. Tr. 1570. A January 2015 CT scan revealed "bulging discs" at three levels, described as "mild," Tr. 1602, and "mild multi-level facet arthrosis." Tr. 22, 1560, 1602. At the February 9, 2015 follow-up with Dr. Chang, he documented normal physical examination findings, Tr. 1600, and concluded "[t]he source of her pain is not entirely clear, I would recommend nonoperative treatment through physical medicine." Tr. 1601. Substantial evidence supports the ALJ's decision to partially discount this medical opinion based upon the lack of evidence showing diminishing limitation over time.

Plaintiff faults the ALJ for not analyzing the evidence cited by Ms. Mikota in her report including decreased range of motion of the spine, positive bilateral leg raise, and the October 2014 MRI. ECF No. 15 at 17. Notably, Ms. Mikota lists "spinal stenosis" as a diagnosis and cites the October 2014 MRI as support, yet neither of Plaintiff's treating physicians, Dr. Chang or Dr. Kim, diagnosed spinal stenosis. The October 2014 MRI results state "some *mild* stenosis of the canal" at the L4-5 level and "*no* significant stenosis" at the other levels. Tr. 1594 (emphasis added). While the ALJ could have more comprehensively explained his decision given the amount of medical evidence presented to him, an ALJ is not required to discuss all the evidence presented in a case. *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (noting the ALJ must explain why he chooses to discount "significant probative evidence.").

Accordingly, the Court concludes the ALJ's decision is not too conclusory and the lack of objective evidence constituted a germane reason supporting the ALJ's rejection of Ms. Mikota's opinion.

### 3. Teresa Charvet, PA-C

Ms. Charvet began treating Plaintiff on July 1, 2013 and saw Plaintiff again on August 1, 2013. Tr. 1003. Ms. Charvet did not manage Plaintiff's chronic back pain. Tr. 1006. On October 7, 2013, Ms. Charvet opined in a Department of Social and Health Services Work Evaluation that Plaintiff was limited to sedentary work and should be limited to participation up to 30 hours per week. Tr. 1028-29. She also opined Plaintiff should avoid prolonged (less than two hours) sitting or standing, and should be allowed change positions/posture frequently. Tr. 1027. She noted the treatment plan was to "[c]ontinue physical therapy, weight loss, and general overall strengthening." Tr. 1029. Three months later, Ms. Charvet completed the same form again and stated that Plaintiff "has been unable to participate in work/school [at] previously reported limitations of 31-40 h[ours] per week." Tr. 1540. Ms. Charvet opined Plaintiff "should be limited to" working one to ten hours a week due to "increased low back pain with minimal activity [and with] prolonged standing/sitting/walking." Tr. 1540.

The ALJ gave these opinions "partial weight," accepting that Plaintiff is capable of performing some sedentary work, but rejecting Ms. Charvet's opinion

Plaintiff could only work on a part-time basis up to 30 hours a week.  Tr. 23.  The

ALJ gave several reasons, which are substantiated by the record.  First, the ALJ

reasoned that "there is no objective evidence to establish that the claimant would

be only capable of performing" part-time work.  Tr. 23.  The ALJ cited as an

example imaging of the lumbar spine from June 2014 which "showed good

positioning of the hardware and improved disc height loss at the L2-L3 level."  Tr.

23.  While Plaintiff is correct that objective evidence is not typically used to

"establish an expected limitation in absenteeism," it is valid to consider that Ms.

Charvet's limitation to part-time work does not appear to be grounded in the

objective medical findings.  Indeed, it appears Ms. Charvet's opinion was

grounded on Plaintiff's reported and/or perceived ability to work or attend school.

Tr. 1540 ("She has been unable to participate in work/school [at] previously

reported limitations"); *see, e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595, 600 (9th Cir. 1999) (noting that a physician's opinion premised upon the

claimant's own accounts may be disregarded where the complaints are properly

discounted).

Second, as in his rejection of Ms. Mikota, the ALJ noted that the physical

findings, described earlier in the decision, "have continued to be normal."  Tr. 23.

Plaintiff disagrees with the ALJ's interpretation of the evidence, however, the only

evidence Plaintiff cites as corroborating Ms. Charvet's part-time work limitation

are the properly discounted opinions of Dr. Schneider and Ms. Mikota. ECF No. 17 at 9. The ALJ did not error in discounting Ms. Charvet's part-time work limitation because it was unsupported by recent medical findings. *Molina*, 674 F.3d at 1111.

### 4. Norman Staley, M.D.

On February 13, 2014, state agency medical consultant Norman Staley, M.D. completed an RFC assessment at the reconsideration level. Tr. 144, 158. Dr. Staley stated he considered *Chavez* and adopted the RFC findings from the previous March 20, 2013 decision. However, Dr. Staley adopted the RFC from the *favorable* portion of the March 20, 2013 decision including the exertional limitation that Plaintiff "would need to occasionally lie in a spine [sic] position through her workday, in addition to her assigned breaks." Tr. 143, 157; *see* Tr. 93. Dr. Staley's explanation for his findings included the remark: "claimant has undergone back surgery since ALJ decision to address back pain." Tr. 144, 158. Though the RFC expressed by Dr. Staley was disabling as determined in the prior ALJ's decision on March 20, 2013, Plaintiff was deemed not disabled on reconsideration. Tr. 146, 160.

The ALJ gave "some weight" to Dr. Staley's opinion, but rejected the limitation Plaintiff would need to lie down. Tr. 24. Though Plaintiff contends the ALJ "did not offer any reason to reject this limitation," the ALJ in fact offered two

ORDER - 37

reasons. First, the ALJ noted that Dr. Staley's opinion was factually inaccurate as Plaintiff had not undergone surgery since the ALJ's previous decision. Tr. 24. The inaccurate factual premise is a reasonable basis to reject the limitation for the need to lie down. Tr. 93.

Second, the ALJ reiterated his conclusion that "the objective findings do not indicate any worsening of her condition." Tr. 24. Plaintiff contends objective worsening is "undeniable" by a comparison of raw medical data contained in the CT scan of the lumbar spine on May 18, 2012, Tr. 890, with the CT scan of the lumbar spine on January 2, 2015, Tr. 1602. The 2015 CT scan results state "[c]hanges of L2-3 interbody fusions…," "mild multilevel facet arthrosis" and "mild bulging" of discs. Tr. 1602 (emphasis added). However, as lay individuals, neither the Plaintiff, the ALJ, nor this Court is in a position to interpret raw radiographic evidence to assess a claimant's RFC. Dr. Chang interpreted this imaging stating: "well-place implants and a healed L2-3 fusion . . . . The source of her pain is not entirely clear." Tr. 1601. Where no medical sources opine specific restrictions based upon a consideration of the most recent radiographic evidence, Plaintiff's argument that it shows she is "undeniably" worse is unsupported.

The ALJ's rejection of Dr. Staley's limitation regarding the need to lie down is supported by substantial evidence.

**E. Residual Functional Capacity**

ORDER - 38

With respect to step four, the ALJ found no evidence of any material change in Plaintiff's mental impairments or physical condition since the date of the prior ALJ's decision warranting a change in the RFC. Plaintiff contends the error in this case was the ALJ's adoption of the prior RFC notwithstanding new medical evidence, including evidence pertaining to the prior adjudicated period. ECF No. 15 at 19; ECF No. 17 at 5-6. Plaintiff contends the ALJ's 2013 decision was based upon the presumption Plaintiff's functionality would improve after the six-month post-surgical recovery period. ECF No. 15 at 8-9. Plaintiff further contends the current record shows the improvement never occurred and her impairments have become more severe, thereby entitling her to an updated determination of her RFC. ECF No. 15 at 8-10.

As discussed above, even if the ALJ had properly concluded the presumption of continuing nondisability did not apply, ALJs are instructed to "give some res judicata consideration" to prior ALJ "findings concerning the claimant's [RFC], education and work experience[.]" *Chavez*, 844 F.2d at 694. The "SSA may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity . . ." AR 97-4(9), available at 1997 WL 742758 at *3.

In reviewing the evidence for materiality, Plaintiff invites the Court to speculate as to the impact the current record could have had on the previous ALJ's

decision. ECF No. 17 at 5. However, *Chavez* instructs that the ALJ must focus on any new and material evidence pertaining to the current adjudicated period, rather than revisiting the finding pertaining to evidence assessed with respect to previously adjudicated periods. 844 F.2d at 694; *see Alekseyevets v. Colvin*, 524 Fed. Appx. 341 (9th Cir. May 2, 2013) (unpublished) ("Although the first ALJ's RFC findings are entitled to 'some res judicata consideration', the *Chavez* presumption does not prohibit a subsequent ALJ from considering new medical information and making an updated RFC determination.") (quoting *Chavez*, 844 F.2d at 694)); Tr. 14 ("The decision of March 20, 2013 is res judicata…Any discussion of the period prior to March 20, 2013 is for background purposes only and is not an implied reopening.").

Plaintiff contends the ALJ ignored the evidence of her worsening condition, ECF No. 17 at 6, and the ALJ's analysis of the issue of "new and material" evidence was too cursory. ECF No. 17 at 5. However, this is not a case in which it appears the ALJ reflexively applied res judicata. The record shows that the ALJ thoroughly reviewed the record and made specific findings at each step of the sequential evaluation. Even if the record demonstrates a progressively worse condition as Plaintiff interprets the evidence, the relevant question is whether the evidence warrants a different RFC. The ALJ determined the evidence did not dictate a revised RFC based on an individualized examination of the evidence.

ORDER - 40

The ALJ's analysis of the medical opinion and Plaintiff's symptom claims was free of prejudicial error. On these grounds, the Court concludes the ALJ met his burden to properly consider the new evidence, *see Chavez*, 844 F.3d at 694, and substantial evidence supports the RFC.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED.**

2. Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED March 15, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 41